# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| ROBIN WILLIAMS, | ) | |
| | ) | |
| Petitioner – Defendant | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1377 |
| | ) | (Criminal No. 08-377) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION

Defendant Robin Williams ("Williams"), a prisoner in federal custody at the Federal Correctional Institution of Ashland, Kentucky, filed a motion to vacate sentence pursuant to 28 U.S.C. § 2255, arguing that two of his three court-appointed counsel were ineffective. (ECF Nos. 428 and 441.)  The government asks the court to summarily dismiss Williams' § 2255 motion on the ground that it is barred by a comprehensive waiver of direct appellate and collateral attack rights set forth in a written plea agreement signed by Williams on July 26, 2011. (ECF No. 445 at 7-8 and 445-1.)

For the reasons set forth below, the court will not enforce the collateral waiver because to do so would work a miscarriage of justice.  Williams, however, is not entitled to relief under § 2255, and his motion, therefore, will be denied.

# I.   FACTUAL BACKGROUND

## A.  Williams' Counsel

On October 28, 2008, Williams was charged in a five-count indictment of conspiracy to distribute and possess with intent to distribute five kilograms or more of powder cocaine and fifty grams or more of crack cocaine from July 2006 until October 2008 in violation of 21 U.S.C. §§ 841 and 846. (ECF No. 1.)[1] Three co-defendants were charged in the same indictment. (Id.) Williams was arrested on July 24, 2009, and waived his right to a detention hearing. (ECF Nos. 81, 84, and 91-93.) Attorney Donna McClelland, who was appointed to represent Williams pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A(a)(1)(A), appeared on behalf of Williams at the arraignment, (ECF Nos. 93-94), and filed a motion to suppress evidence on Williams' behalf, (ECF No. 174).   After Williams filed two motions seeking to dismiss Attorney McClelland, Attorney McClelland sought permission from the court to withdraw due to irreconcilable differences with her client, which motion was granted on March 7, 2011. (ECF Nos. 143, 204, 205, and 209.)

Thereafter, the court appointed Attorney Alexander Lindsay to represent Williams. (ECF No. 216.) Attorney Lindsay represented Williams at a May 31, 2011 hearing on the motion to suppress that had been previously filed by Attorney McClelland. (ECF No. 233.)  The motion to suppress was denied at the hearing. (Id.) Attorney Lindsay also represented Williams at a July 26, 2011 change of plea hearing. (ECF Nos. 247-48.)  On October 17, 2011, Williams filed motions to dismiss Attorney Lindsay, withdraw his guilty plea, and modify the order of detention to allow him to be immediately released. (ECF Nos. 256-58.)  On the same day, Attorney Lindsay filed a motion to

---

[1] The relevant filings with respect to the § 2255 motion were made on the docket for Criminal No. 08-377.   Any reference to an ECF number in this opinion will be to the docket of that criminal case, unless otherwise noted.

withdraw as counsel, which the court granted at an October 26, 2011 motion hearing. (ECF No. 263.) The court denied Williams' other motions, without prejudice.

The court next appointed Attorney Mark Sindler to represent Williams on November 7, 2011. (ECF No. 264.) Attorney Sindler promptly filed a motion to postpone Williams' sentencing hearing, then scheduled for December 2, 2011, and later sought an additional extension in order to review Williams' file. (ECF Nos. 266 and 280.) The court granted both extensions. (11/17/2011 text order and ECF No. 283.) Attorney Sindler filed a motion to withdraw Williams' guilty plea on March 16, 2012. (ECF No. 291.) Williams, however, orally withdrew that motion at the May 30, 2012 hearing on it, and was sentenced on July 30, 2012. (5/30/12 minute entry; ECF Nos. 336-37.) Attorney Sindler sought permission to withdraw as counsel upon Williams' filing of various pro se motions after his sentencing. (ECF Nos. 431 and 433.) The court, thereafter, appointed the Office of the Federal Public Defender to represent Williams.[2] (ECF No. 434.)

## B. **Williams' Guilty Plea**

Approximately six weeks after Williams' motion to suppress was denied, Attorney Lindsay notified the court that Williams wished to change his plea to guilty. (ECF No. 233 and 7/14/2011 text entry.) A change of plea hearing was held on July 26, 2011. (ECF Nos. 247-48.) At that hearing, Williams disclosed that he was pleading guilty pursuant to a written plea agreement dated July 8, 2011 (the "July 2011 plea agreement"). (ECF Nos. 316 at 2 and 445-1.) The court conducted a colloquy in accordance with Federal Rule of Criminal Procedure 11 to ensure that

---

[2] Although the Federal Public Defender's Office assisted Mr. Williams with respect to a motion for clarification, which he filed pro se, (see ECF No. 405 and Minute Entries dated 8/7/14, 8/29/14, 9/23/14, 10/15/14, and 11/1/14), counsel did not participate in or make any filings with respect to Mr. Williams' § 2255 motion, (ECF Nos. 428, 441, 446-49, 453). The court considers Williams to be proceeding pro se with respect to his § 2255 motion, and will not summarily deny it on the ground that Williams cannot make pro se filings while being represented by counsel.

Williams' guilty plea was voluntary. (ECF Nos. 285 and 316.)  At various times throughout the colloquy Williams sought clarification and asked pointed questions of the court, reflecting that Williams was competent, fully engaged in the proceedings, and aware of the significance of entering a guilty plea. (ECF Nos. 285 at 10-12 and 316 at 9-13.)

Specifically, the court determined that Williams was competent to plead guilty. (ECF No. 285 at 3-5.)  The court then engaged in the following exchange:

> THE COURT: Have you had ample, meaning enough, time and opportunity to discuss your case with your attorney, Mr. Lindsay?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: Are you fully satisfied with the counsel, representation, and advice, given to you in this case by your attorney, Mr. Lindsay?
>
> THE DEFENDANT: Yes.

(ECF No. 285 at 5.)  The court advised Williams that he would be waiving his right to a jury trial and against self-incrimination by pleading guilty, which Williams acknowledged and accepted.  (Id. at 5-10.)  The court explained how the federal sentencing guidelines would impact Williams' sentence:

> THE COURT:  Now, do you understand that the United States Sentencing Commission has promulgated Sentencing Guidelines?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that the Guidelines are advisory and that it is one of the factors that the Court will consider in determining your actual sentence?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And have you discussed with your attorney how the Guidelines might apply in your case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, do you understand that the Court cannot determine the actual advisory Guideline range for your case until after the presentence investigation report has been prepared and you and the government have had an opportunity to challenge the facts and recommendations reported in the presentence report?

THE DEFENDANT: I understand.

THE COURT: So, do you understand that because that process has to take place, that if the Guideline range determined by the Court is different than the Guideline range your counsel discussed with you, you will still be bound by your guilty plea and will have no right to withdraw it, even if your counsel made a mistake?

THE DEFENDANT: Yes.

THE COURT: Now, do you understand, after it has been determined what the Guideline range will be for your case, that the Court will also examine other statutory sentencing factors under Title 18, United States Code, Section 3553(a) that may result in the imposition of a sentence that is either greater or lesser than that called for by the Guidelines?

THE DEFENDANT: Yes, ma'am.

…

THE COURT: Do you understand that if the sentence imposed is more severe, meaning greater, than you expect, you will still be bound by your guilty plea and will have no right to withdraw it?

THE DEFENDANT: Yes.

(Id. at 13-14, 14-15.)  The court reviewed the applicable minimum and maximum penalties, and the

consequences of being adjudged guilty of a felony offense:

THE COURT: Okay. So, the Court has calculated the pertinent minimum and maximum penalties as follows. Now, do you understand that the minimum penalty to a lesser included offense at Count One of the indictment is a term of supervised release of at least three years?

THE DEFENDANT: Yes.

THE COURT: And do you understand that the maximum penalty to the lesser included offense at Count One of the indictment is a term of imprisonment of not more than twenty years, a term of supervised release of life, and a fine not to exceed $1 million?

THE DEFENDANT: Yes.

(Id. at 15-16.)  Williams denied that anyone had threatened him or forced him in any way to plead

guilty. (Id. at 17.)

The court conducted a lengthy colloquy at side bar with respect to the terms of Williams' written plea agreement with the government.

> THE COURT: Have you entered into a plea agreement with the government?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, did you have an opportunity to read all the provisions of the plea agreement before you signed it?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: Did you discuss the plea agreement with your attorney before you signed it?
>
> THE DEFENDANT: Yes.

(ECF No. 316 at 2.) After Assistant United States Attorney Lenhardt reviewed the initial terms of the plea agreement, including a broad waiver of Williams' direct appeal and collateral attack rights, the court interrupted to specifically review and reiterate the terms of Williams' waiver in this regard:

> THE COURT: Mr. Williams, I just want to go over that last paragraph with you. Do you understand that by entering into the plea agreement, you have agreed to give up or limit in very substantial ways your ability to take an appeal or come back at a later time and attack your sentence?
>
> THE DEFENDANT: Yes, I do.
>
> THE COURT: Do you understand that there's only going to be three situations in which you can take an appeal?
>
> THE DEFENDANT: Yes.
>
> THE COURT: The first situation is, if the government were to appeal, then you could appeal. You understand that?
>
> THE DEFENDANT: I understand.
>
> THE COURT: You understand there's no limit on the government's ability to appeal.
>
> THE DEFENDANT: Yes.
>
> THE COURT: The second situation in which you could take an appeal is if the Court were to impose a sentence that exceeds the statutory maximums. If you remember just a few minutes ago, I went over with you what the maximum penalties were by statute.

So, if Court were to impose a sentence that would exceed those statutory maximums, then you could appeal. Do you understand that?

THE DEFENDANT: I understand, Your Honor.

THE COURT: The third and final situation is, after the Court determines what the actual Guideline range would be for your case, if the Court were to impose a sentence that unreasonably exceeds that Guideline range, then you could appeal?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So, if you don't fall within those three situations, do you understand that you will not have a right to take an appeal?

THE DEFENDANT: Yes.

THE COURT: You understand, also, that you have totally and completely given up your right to come back at a later time and to attack your conviction or sentence?

THE DEFENDANT: Yes.

THE COURT: So, you understand then if you don't fall within one of those three situations, the sentence that this Court imposes can't be attacked?

THE DEFENDANT: I understand.

THE COURT: Are you willing to give up those very significant rights for the benefits of the plea agreement?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions about it?

THE DEFENDANT: No.

(Id. at 4-6.)

After the remaining terms of the plea agreement were recited by Attorney Lenhardt,

the court engaged in the following exchange with Williams:

THE COURT: Now, Mr. Williams, I just want to go over that last paragraph before your signature. It says that you received a letter from your attorney, Mr. Lindsay. Is that true?

THE DEFENDANT: That's true, Your Honor.

THE COURT: It says you read and discussed it with him?

THE DEFENDANT: That's true, Your Honor.

7

THE COURT: It says you accept and acknowledge that it fully sets forth your agreement with the Office of the United States Attorney for the Western District of Pennsylvania. Is that true?

THE DEFENDANT: That's true.

THE COURT: Finally, you are affirming there are no additional promises or representations made to you by any agents or officials of the United States in connection with this matter. Is that true?

THE DEFENDANT: Correct, Your Honor.

(Id. at 8.)   The court asked Williams if he had any questions about the plea agreement, at which time

Williams asked for an explanation of "relevant conduct," (id. at 9-10), and "overt acts," (id. at 10-11),

and about how adjustments are made at sentencing based on an individual's role in the offense, (id. at

11-13.)   The court, the Assistant United States Attorney, and defense counsel all addressed Williams

in order to answer each of his questions.   At the end of this discussion, the court asked:

THE COURT: Do you have any other questions?

THE DEFENDANT: No.

THE COURT: So, Mr. Lenhardt correctly states the terms of the plea agreement as you understand them?

THE DEFENDANT: Yes.

THE COURT: Do you understand the terms of the plea agreement?

THE DEFENDANT: I do.

THE COURT: Do you understand that the terms of the plea agreement are merely recommendations to the Court? That I can accept or reject the recommendations without permitting to you withdraw your plea of guilty and could impose a sentence that is more severe, meaning greater than you anticipate?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: Mr. Williams, has anyone made a promise to you, other than the promises made in the plea agreement, that induced you to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone made any promise or assurance that is not in the plea agreement to persuade you to accept the plea agreement?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you or anyone else in any way to persuade you to accept the plea agreement?

THE DEFENDANT: No.

THE COURT: Has anyone made any prediction or promise to you about what your actual sentence will be, other than what you have been told are the minimum and maximum penalties?

THE DEFENDANT: No.

THE COURT: Is there anything I have said here today that would suggest to you what your actual sentence will be, other than what I told you are the minimum and maximum penalties?

THE DEFENDANT: No.

THE COURT: Mr. Williams, have you been instructed by the government attorney, your attorney, or anyone else, to respond untruthfully to any question this Court has asked you?

THE DEFENDANT: No.

(<u>Id.</u> at 12-14.)

Upon returning to the public record, the government reviewed the elements of the offense and the evidence against Williams. (ECF No. 285 at 17-18, 19-21.)  Williams acknowledged the elements and evidence, stated his desire to persist in his guilty plea, and executed a written change of plea form. (<u>Id.</u> at 18-19, 21-22.)  Sentencing was scheduled for December 2, 2011. (<u>Id.</u> at 24.)

On October 17, 2011, Williams, proceeding <u>pro se</u>, moved to withdraw his guilty plea on the grounds that: (1) he "is not guilty of the charges contained in the indictment;" (2) he was "not made aware of the possible results of entering a guilty plea;" and (3) he "was under the impression that his base offense level would be 18." (ECF No. 257.)  The court denied this motion without prejudice and appointed new counsel for Williams. (ECF No. 264.)  Newly-appointed Attorney

Sindler filed a motion seeking the same relief on Williams' behalf on March 16, 2012. (ECF Nos. 291 and 292.)  Attorney Sindler argued that manifest injustice would result if Williams' guilty plea were enforced because it was the result of Attorney Lindsay's ineffective assistance. (ECF No. 292 at 6-7.)  In both Attorney Sindler's filing, and Williams' pro se filing, Williams contended that had Attorney Lindsay properly advised him, he would have persisted in his not guilty plea and proceeded to trial. (ECF Nos.  257 at 1 and 292 at 10; see also ECF No. 256 ¶¶ 7-8.)  Defendant orally moved to withdraw this motion to withdraw his guilty plea at the May 30, 2012 hearing scheduled on the matter. (5/30/12 minute entry.)  In his § 2255 submissions, Williams contends that he withdrew his motion because Attorney Sindler advised him that he would be convicted at trial, would be sentenced to twenty years, or more, in jail, and the government "may file 851 enhancements." (ECF No. 439 at 4.)

### C.  **Williams' Sentencing**

The court held a sentencing hearing in this case on July 30, 2012. (ECF No. 336.) Prior to the hearing Attorney Sindler filed a position with respect to sentencing factors in which he argued that the government acted wrongfully by refusing to award Williams a three-level reduction in his offense level for acceptance of responsibility "as a sort of penalty in retaliation" for filing a motion to suppress evidence. (ECF No. 330.)  In that filing, Attorney Sindler noted that the two prior plea offers extended to Williams before he filed a motion to suppress, dated January 28, 2010 and May 10, 2010, gave him the benefit of the full three-level reduction. (Id. at 3; ECF No. 174.) Williams' motion to suppress was filed on October 25, 2010, and argued on May 31, 2011. (ECF Nos. 174 and 233.)  The plea agreement signed by Williams was dated July 8, 2011, and only afforded Williams a two-level reduction for acceptance of responsibility. (ECF No. 445-1.)

Attorney Sindler also filed a sentencing memorandum in advance of Williams' July 30, 2012 sentencing hearing. (ECF No. 334.)   In that filing Attorney Sindler argued that the objectives of § 3553(a) would not be served by sentencing Williams within the career offender guideline range of 168-210 months imprisonment, and instead advocated for a sentence in the range of 37-46 months imprisonment, which combined the terms of the July 2011 plea agreement with the three-level reduction from the two prior plea offers, resulting in an adjusted offense level of 17 and a criminal history category of IV. (Id. at 6-11.)   Attorney Sindler did not argue that Williams' classification as a career offender under the guidelines was wrong.   Williams does not advance such an argument in his § 2255 motion.   It is undisputed that Williams was properly classified as a career offender under the guidelines.

On July 30, 2012, the court sentenced Williams to a term of imprisonment of 126 months, and a term of supervised release of three years. (ECF No. 337.)   In doing so, the court applied the career offender guideline, which resulted in a total offense level of 30, and a criminal history category of VI, and a recommended guidelines sentencing range of 168-210 months imprisonment.   The court imposed a sentence below this advisory guidelines range, however, based on the nature and circumstances of the offense and the history and characteristics of the defendant, pursuant to 18 U.S.C. § 3553(a).   Although the facts and circumstances justified a downward variance, the court stated that one reason that a greater variance was not applied was because Williams qualified as a career offender. (Trans. of Sent. Hrg. at 42-45.)

### D. **Post-Conviction Filings**

Williams timely filed, pro se, a motion collaterally attacking his sentence pursuant to 28 U.S.C. § 2255.[3] (ECF No. 428, refiled at ECF No. 441.)  At the same time, Williams filed a motion requesting documents and transcripts pursuant to 28 U.S.C. § 2250 and a motion requesting a stay of the § 2255 proceedings so that he could add factual details to his motion based on those documents and transcripts. (ECF Nos. 427 and 430.)  The court granted the motion to stay, but denied the § 2250 motion as moot because the government voluntarily provided Williams with the documents he requested. (8/2/13 and 9/10/13 text orders.)  Williams also filed a document entitled "motion pursuant to 15(c)(2) of the Federal Rules of Civil Procedure to relate back the claims filed in the 2255 motion." (ECF No. 436, refiled at ECF No. 439 to insert a missing page.)  The court considers that motion to constitute the submission of a brief in support of the § 2255 motion, and will grant the motion in that respect.   In this opinion, the court will cite to the brief that was re-filed at ECF No. 439, because it includes all pages.  Williams again filed motions requesting documents pursuant to § 2250, and discovery. (ECF Nos. 447 and 448.)  Although these two motions remain pending, they are only pertinent if Williams' § 2255 motion would be aided by the addition of factual detail and support.  Because the court concludes that Williams' motion would not be aided by additional facts, these motions will be denied.

In his pro se § 2255 filings, Williams alleges that Attorneys Lindsay and Sindler were both ineffective. (ECF Nos. 439 and 441.)  Williams' position is that if Attorneys Lindsay and Sindler had offered effective representation, he would have accepted a plea offer dated May 10, 2010 (the "May 2010 plea offer"), which would have reduced his guidelines sentencing range from 168-210 months incarceration to 151-188 months incarceration due to the additional one-level reduction

---

[3] The record reflects that the motion was mailed on July 27, 2013 and was docketed by the court on August 1, 2013, which satisfies the statute's one-year statute of limitations. 28 U.S.C. § 2255(f); (ECF No. 428 at 4.)

to his offense level for acceptance of responsibility. (ECF Nos. 439 at 11, 13 and 453 at 4.) According to Williams, a range of 151-188 months incarceration "was a sentence [I] would have accepted." (ECF No. 439 at 11.) This court sentenced Williams to serve a term of imprisonment of 126 months, which is below the range that Williams characterizes as acceptable in his § 2255 filings. (ECF No. 337.)

Williams specifically alleges that Attorney Lindsay was ineffective because he: (1) failed to retrieve his case file from his previous court-appointed attorney; (2) failed to investigate his criminal history, and properly advise him that he would be sentenced as a career offender; (3) failed to tell him what his sentencing guideline range would be as a career offender; and (4) failed to advise him with respect to whether to accept the May 2010 plea offer. (ECF No. 439 at 2-3.) Williams specifically claims that Attorney Sindler was ineffective because he failed to ask the court to reinstate the May 2010 plea offer based on Attorney Lindsay's ineffectiveness. (Id. at 15-16.) The government asks that Williams' § 2255 motion be summarily dismissed because it is barred by the collateral attack waiver provision of his written plea agreement. (ECF No. 445 at 7-8.) In his reply brief, Williams contends that his waiver of the right to collaterally attack his sentence was involuntary and unenforceable because his counsel was ineffective. (ECF No. 453.)

### E.  Prior Plea Offers

The record reflects that the Office of the United States Attorney tendered three proposed plea agreements to Williams: (1) a January 28, 2010 offer; (2) a May 10, 2010 offer; and (3) a July 8, 2011 offer. (ECF Nos. 445-1, -2 and -3; 330 at 3.) The January 28, 2010, offer is without consequence to Williams' motion.  In his § 2255 motion, Williams contends that if he had been properly advised by Attorneys Lindsay and Sindler, then he would have accepted the May 10, 2010 plea offer, instead of the July 8, 2011 plea agreement, which he ultimately signed.  (ECF No.

439 at 11, 20 (¶ 8).) Williams specifically avers that had he accepted the May 2010 offer, his sentencing range would have been 151-188 months, which "was a sentence [I] would have accepted." (Id.)

Before proceeding with a close comparison of the terms of the May 2010 plea offer and July 2011 plea agreement, the court notes the following: (1) the court sentenced Williams to 126 months imprisonment, which is below the advisory guidelines sentencing range called for by both the May 10, 2010 plea offer and July 8, 2011 plea agreement, and well below the statutory maximum of 240 months incarceration; (2) Williams' current position, i.e., that his ineffective attorneys denied him the ability to accept the May 10, 2010 plea offer, contradicts the position he took when seeking to withdraw his guilty plea in 2012, at which time he argued that had he been properly advised he would have rejected any and all plea offers and proceeded to trial based on his actual innocence (ECF Nos. 257 at 1 and 292 ¶¶ 2, 4-5; see ECF No. 256 ¶¶ 7-8); (3) neither the May 2010 plea offer nor the July 2011 plea agreement address whether Williams will be classified as a career offender under the applicable guideline, U.S.S.G. § 4B1.1, or consider the effect that Williams' classification as a career offender could have on his sentence; and (4) the only harm that Williams contends he suffered as a result of his counsels' ineffectiveness is the loss of the additional one-level reduction for acceptance of responsibility which was included in the May 2010 plea offer, but not in the July 2011 plea agreement. Williams does not now contend, and never has contended, that the career offender guideline should not have been applied to him, or was applied incorrectly at sentencing. Williams does not now assert that he is innocent of the crime to which he pled guilty in 2011.

1. **The May 10, 2010 Plea Offer**

As an initial matter, Williams refers repeatedly throughout his briefing to a plea offer dated May 31, 2011. (e.g., ECF No. 439 at 2.) The hearing on Williams' motion to suppress was held on May 31, 2011. (ECF No. 233.) There is no evidence that a plea offer was made to Williams on the date of that hearing; and in fact, the evidence is universally to the contrary. The record establishes that a plea agreement was offered to Williams, through then-counsel Attorney McClelland, on May 10, 2010. (ECF Nos. 330 at 3 and 445-2.) Attorney Lenhardt resent a copy of that proposed plea agreement to Williams' then-counsel Attorney Lindsay on May 9, 2011. (ECF No. 450-1.) The proposed agreement resent on May 9, 2011, is identical to the agreement initially offered on May 10, 2010. Attorney Lenhardt expressed that the terms of the May 10, 2010 plea offer would expire on May 24, 2011, because the hearing on Williams' motion to suppress evidence was scheduled for May 31, 2011. (Id. at 1.) Williams explains in his reply brief that the confusion regarding a May 2011 plea agreement arose only because he was not made aware that an offer had been made in May 2010, until he saw Attorney Lindsay at the May 31, 2011 suppression hearing. (ECF No. 453 at 2-3.) There is no plea offer dated May 31, 2011, and the court will construe each of Williams' references to such an offer as referring, instead, to the May 2010 plea offer.

The salient terms of the May 10, 2010 plea offer were:

- Williams pleads guilty to Count 1 of the indictment, i.e., conspiracy to distribute and possess with the intent to distribute both powder and crack cocaine;

- Williams is given a three-level reduction in offense level for acceptance of responsibility;

- The parties stipulate that the amount and quantity of drugs attributable to Williams pursuant to U.S.S.G. § 2D1.1 is more than 400 grams, but less than 500 grams of powder cocaine.

(ECF No. 445-2.)

Without application of the career offender guideline, the May 10, 2010 plea offer would have resulted in an adjusted offense level of 21, which at a criminal history category of IV would result in a recommended guidelines sentencing range of 57-71 months imprisonment. U.S.S.G. § 2D1.1(c)(8). With application of the career offender guideline, the adjusted offense level would be 29 and the criminal history category would automatically be VI, resulting in a recommended guidelines sentencing range of 151-188 months imprisonment. U.S.S.G. § 4B1.1(b)(3).

### 2. **The July 8, 2011 Plea Agreement**

Williams signed the plea agreement offered to him on July 8, 2011. The salient terms of the July 8, 2011 plea agreement are:

- Williams pleads guilty to the lesser included offense at Count 1 of the indictment of conspiracy to distribute powder cocaine;

- Williams is given a two-level reduction in offense level for acceptance of responsibility;

- The parties stipulate that the amount and quantity of drugs attributable to Williams pursuant to U.S.S.G. § 2D1.1 is more than 200 grams, but less than 300 grams of powder cocaine.

(ECF No. 445-1.) The May 10, 2010 plea offer, which Williams now claims he would have signed were it not for the ineffective assistance of Attorneys Lindsay and Sindler, and the July 8, 2011 plea agreement, which Williams did sign, both include identical language pursuant to which Williams agrees to waive his direct and collateral appeal rights, except in limited circumstances. (ECF Nos. 445-1 and -2.) Paragraph 4 of both plea agreements states:

Robin Williams waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:

(a) If the United States appeals from the sentence, Robin Williams may take a direct appeal from the sentence.
(b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence

16

unreasonably exceeds the guidelines range determined by the
Court under the Sentencing Guidelines, Robin Williams may
take a direct appeal from the sentence.

Robin Williams further waives the right to file a motion to vacate
sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence,
and the right to file any other collateral proceeding attacking his
conviction or sentence.

(ECF Nos. 445-1 at 2 and 445-2 at 3.)

Without application of the career offender guideline, the July 8, 2011 plea agreement

would result in an adjusted offense level of 18, which at a criminal history category of IV would

result in a recommended guidelines sentencing range of 41-51 months imprisonment. U.S.S.G. §

2D1.1(c)(10). With application of the career offender guideline, the adjusted offense level would be

30 and the criminal history category would automatically be VI, resulting in a recommended

guidelines sentencing range of 168-210 months imprisonment. U.S.S.G. § 4B1.1(b)(3). This

guideline calculation was applied by the court at sentencing.

Because the court found Williams to be a career offender, the only pertinent difference

between the May 2010 plea offer and the July 2011 plea agreement is Williams' loss of the additional

one-level reduction in offense level for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b).[4]

That adjustment may only be granted upon the government's motion, which decision is reviewable by

a court only if it is based on an unconstitutional reason, such as defendant's race, religion, or gender,

or is not rationally related to the legitimate governmental interest of incentivizing defendants to

promptly plead guilty. U.S.S.G. § 3E1.1, appl. note 6; United States v. Drennon, 516 F.3d 160, 162-

---

[4] Although the July 2011 plea agreement also allowed Williams to plead guilty to a lesser included
offense and stipulate to a lesser quantity of drugs, both of which theoretically benefitted Williams,
these differences were ultimately inconsequential because Williams was deemed to be a career
offender, which caused his offense level and criminal history to be set by the career offender
guideline. Had Williams not been deemed a career offender, the July 2011 plea agreement would
actually have resulted in a lower recommended guidelines sentencing range than the May 2010 plea
offer.

63 (3d Cir. 2008); <u>United States v. Wright</u>, 289 F.App'x 543, 546 (3d Cir. 2008). The panel of the Court of Appeals for the Third Circuit that considered the issue found that the government can refuse to credit the third point for acceptance of responsibility based on a defendant's filing of a motion to suppress evidence, provided that the refusal does not rise to the level of prosecutorial vindictiveness. <u>United States v. Sanders</u>, 208 F.App'x 160, 163 (3d Cir. 2006).

## II.    <u>LEGAL STANDARDS</u>

### A.  <u>Section 2255 Motions</u>

Under 28 U.S.C. § 2255, a federal prisoner in custody may move the court that imposed the sentence to vacate, set aside, or correct the sentence upon the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255; <u>Hill v. United States</u>, 368 U.S. 424, 426-27 (1962). As a § 2255 motion is one for extraordinary habeas corpus relief, "the appropriate inquiry [is] whether the claimed error of law was 'a fundamental defect which inherently results in a complete miscarriage of justice,' and whether 'it . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" <u>Casper v. Ryan</u>, 822 F.2d 1283, 1288 (3d Cir. 1987) (quoting <u>Hill</u>, 368 U.S. at 428).

Although a district court has discretion in determining whether to conduct an evidentiary hearing, a hearing is generally required "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief." 28 U.S.C. § 2255; <u>United States v. Lilly</u>, 536 F.3d 190, 195 (3d Cir. 2008); <u>United States v. Booth</u>, 432 F.3d 542, 545-46 (3d Cir. 2005). A hearing need not be held if the movant's allegations cannot be accepted as true because they are

contradicted by the record, inherently incredible, or are conclusions rather than statements of fact. United States v. McCoy, 410 F.3d 124, 134 (3d Cir. 2005).

## B. **Ineffective Assistance of Counsel**

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a movant must prove: (1) deficient representation, meaning that counsel's representation fell below an objective standard of reasonableness; and (2) prejudice, meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 694 (1984).

### 1. **Deficient Representation**

The movant's burden on the deficiency prong is to show that "counsel's representation fell below an objective standard of reasonableness." Taylor, 529 U.S. at 390-91 (citing Strickland, 466 U.S. at 688). "A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." Harrington v. Richter, 131 S.Ct. 770, 787 (2011) (internal quotations omitted).

The proper standard for evaluating objective reasonableness is, as a general guideline, "reasonably effective assistance" under "prevailing professional norms." Strickland, 466 U.S. at 687-89. The Court in Strickland explicitly declined any further specificity. Id. The Court of Appeals for the Third Circuit held (prior to Strickland) that these standards ensure "the exercise of the customary skill and knowledge which normally prevails at the time and place." Moore v. United States, 432 F.2d 730, 736 (3d Cir. 1970). A movant is not entitled to a "perfect defense" in accordance with this

standard, and a "perfect defense" is not guaranteed under the Sixth Amendment.  See Strickland, 466 U.S. at 689 ("[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation. . . . The purpose is simply to ensure that criminal defendants receive a fair trial."); Diggs v. United States, 833 F.2d 439, 446 (3d Cir. 1987) ("In any event the right to effective assistance of counsel does not guarantee that an attorney will never err."); Moore, 432 F.2d at 736 ("Perfection is hardly attainable and certainly is not the general rule.").

In evaluating whether a counsel's performance was deficient under these standards, the ultimate conclusion must be reached in light of the totality of the circumstances of counsel's performance as a whole.  Strickland, 466 U.S. at 690.  In reviewing the totality of the circumstances, the court must be "highly deferential" to counsel's assistance, without regard to the vantage of hindsight; it must consider the circumstances from counsel's perspective; and it must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  Considerable latitude is afforded to counsel in executing professional judgment under the circumstances in defending clients.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."  Id. at 690.

**2.  Prejudice**

To demonstrate prejudice, "a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694; see Williams, 529 U.S. at 390-91.  A movant must go beyond proving that counsel's unprofessional errors had "some conceivable effect on the outcome of the proceeding."  Strickland, 466 U.S. at 693.  A movant must show there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

### 3.  Order of Analysis

District courts may examine the prejudice prong of the Strickland test before evaluating whether counsel's performance was constitutionally deficient.  Booth, 432 F.3d at 546; McAleese v. Mazurkiewicz, 1 F.3d 159, 170 (3d Cir. 1993).  There is no need to address both prongs if movant cannot meet his burden of proof on the other. Strickland, 466 U.S. at 697.

## III.  DISCUSSION

As an initial matter, this court finds that an evidentiary hearing is not required, and that fact discovery would have no substantive effect on Williams' motion.  As will be explained below, even if each of Williams' contentions is accepted as true, the files and records of the case show conclusively that Williams is not entitled to relief because he cannot demonstrate that the result of the proceedings would have been different but for counsels' errors. 28 U.S.C. § 2255; Lilly, 536 F.3d at 195; Booth, 432 F.3d at 545-46.

### A.  Waiver of Right to Collaterally Attack a Sentence

The government asks this court to dismiss summarily Williams' § 2255 motion on the ground that it is barred by a comprehensive waiver of collateral attack rights set forth in the July 2011 plea agreement. (ECF No. 445 at 7-8 and 445-1.)  In his reply brief, Williams contends that the waiver of his right to collaterally attack his sentence was involuntary and unenforceable because his counsel was ineffective. (ECF No. 453.)   This issue must be addressed first because if Williams' waiver is enforced, then the court need not reach the merits of his § 2255 motion.

1.      **Generally Applicable Law**

A criminal defendant "may waive both constitutional and statutory rights," including the right to appeal or to collaterally challenge his sentence, provided the waiver is entered into "voluntarily and with knowledge of [its] nature and consequences." United States v. Mabry, 536 F.3d 231, 236–37 (3d Cir. 2008) (waiver of right to seek collateral relief under § 2255); United States v. Khattak, 273 F.3d 557, 562–63 (3d Cir. 2001) (waiver of right to file a direct appeal). "The constitutional requirement that a guilty plea be knowing and voluntary is embodied in Federal Rule of Criminal Procedure 11." United States v. Schweitzer, 454 F.3d 197, 202 (3d Cir. 2006). That rule provides that when "considering and accepting a guilty plea," the court must engage in "advising and questioning" the defendant to ensure that the plea is knowingly made. Fed. R. Crim. P. 11(b)(1). The rule requires the court to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).

When the government invokes a waiver of collateral attack rights to bar review of the merits of a defendant's claim of ineffective assistance of counsel, a court must consider: (1) whether the waiver was knowing and voluntary; (2) whether the issue pressed by defendant falls within the scope of the waiver; and (3) whether enforcing the waiver would "work a miscarriage of justice." United States v. Grimes, 739 F.3d 125, 128-29 (2014); United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008); Mabry, 536 F.3d at 244; Khattak, 273 F.3d at 562–63. Although the defendant bears the burden of proof, the court has an independent duty to evaluate the validity of a waiver of collateral attack rights by, at least, reviewing the sufficiency of the terms of the plea agreement and the change of plea colloquy. Mabry, 536 F.3d at 237-38.

The Court of Appeals for the Third Circuit has adopted a "common sense approach in determining whether a miscarriage of justice would occur if [a] waiver were enforced." <u>Mabry</u>, 536 F.3d at 242. Before invalidating a waiver because it would work a "miscarriage of justice," a court should consider such factors as: (1) the clarity of the error; (2) the gravity of the error; (3) the character of the error, e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum; (4) the impact of the error on the defendant; (5) the impact of correcting the error on the government; and (6) the extent to which the defendant acquiesced in the result. <u>Id.</u> at 242–43 (citing <u>United States v. Teeter</u>, 257 F.3d 14, 25–26 (1st Cir. 2001)). "Courts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice" and must engage in the case-by-case evaluation "embraced in <u>Khattak</u>, which requires determining the validity of each appellate waiver based on its terms and the circumstances in that case." <u>United States v. Mitchell</u>, 538 F.App'x 201, 203 (3d Cir. 2013) (citing <u>Khattak</u>, 273 F.3d at 563, and <u>Goodson</u>, 544 F.3d at 535); <u>see</u> <u>United States v. Castro</u>, 704 F.3d 125, 136 (3d Cir. 2013).

## 2. <u>Recent Trend – The Ethical Problem</u>

In January 2014, the Court of Appeals for the Third Circuit declined to find that waivers of the right to collaterally attack a sentence are invalid <u>per se</u> if they apply to claims of ineffective assistance concerning the same attorney who negotiated the plea agreement. <u>Grimes</u>, 739 F.3d at 130. The court of appeals did not hold that such waivers could never be deemed invalid. In reaching the holding in <u>Grimes</u>, the appellate court "acknowledge[d] the ethical concerns noted by the National Association of Criminal Defense Lawyers and at least eight states' legal ethics arbiters," and stated that it "undoubtedly will have occasion to address that issue in another case." <u>Id.</u> at 130 &

n.3.  No such occasion has yet arisen,[5] but since <u>Grimes</u> the Pennsylvania Bar Association Legal

Ethics and Professional Responsibility Committee issued an advisory opinion addressing the issue.

<u>Conflicts of Interest and Other Misconduct Related to Waivers of Claims for Ineffective Assistance</u>

<u>of Counsel</u>, Pennsylvania Bar Association Legal Ethics and Professional Responsibility Committee

(the "PBA Committee"), Formal Opinion 2014-100 ("PBA Committee Opinion").  The opinion is not

binding on this court, and does not opine with respect to whether previously-signed collateral attack

waivers should be enforced in the federal district courts.

In the opinion, the PBA Committee concluded that it is a conflict of interest for a

lawyer to advise a client to accept a plea agreement that includes a waiver of ineffective assistance of

counsel claims concerning his or her representation. <u>Id.</u> at 1.  The PBA Committee opined that a

prosecutor should not offer an agreement that includes such a waiver because it is "prejudicial to the

administration of justice," and would assist the defense attorney in unethically limiting his liability to

his client.  <u>Id.</u> at 1-2.  The PBA Committee's thorough opinion notes that the "majority of state bar

ethics opinions that have addressed the ethical propriety of a plea agreement that contains a provision

waiving the defendant's right to later bring a claim of [ineffective assistance of counsel] share the

view that a criminal defense lawyer may not advise a client to enter into such a plea agreement" and

cites to ethics opinions issued in Missouri, Florida, Ohio, Vermont, Tennessee, North Carolina, and

Alabama, and by the National Association of Criminal Defense Counsel to that effect.  <u>Id.</u> at 3-6.

The PBA Committee considered, but rejected, the contrary view, which is accepted in Texas and

Arizona. <u>Id.</u> at 6-7.  The PBA Committee Opinion also favorably cites to a 2012 decision issued by

---

[5] In <u>United States v. Calcagni</u>, No. 13-1801, 2014 WL 2566098, at *3 & n.2 (3d Cir. 2014), a panel of
the court of appeals noted that while the district court concluded that defendant waived his right to
collaterally attack his sentence, both parties agreed that the waiver should not preclude ineffective
assistance of counsel claims, and the government did not seek to enforce that waiver during appellate
proceedings.

Judge Sanchez of the United States District Court for the Eastern District of Pennsylvania which, even at that time, acknowledged "an emerging trend among state bar ethics committees to recognize [that] a criminal defense lawyer's personal interest in avoiding ineffective assistance of counsel claims may create a conflict of interest for the lawyer in advising his client regarding a plea agreement that would waive such claims." United States v. Deluca, No. 08-108, 2012 WL 5902555, at *10 (E.D. Pa. Nov. 26, 2012).[6]

At the times pertinent to Williams' plea negotiations and guilty plea, broad waivers of a defendant's rights to take a direct appeal and to collaterally attack his sentence were routinely included in written plea agreements in this judicial district. Counsel for the government, and for defendants, considered such waivers to be appropriate and acceptable. District judges regularly approved plea agreements that included such waivers. The practice was then customary and widely accepted. In this jurisdiction the practice changed only after the PBA Committee Opinion was issued this year. After that opinion was issued, the United States Attorney's Office for the Western District of Pennsylvania removed the language requiring a defendant to waive the right to collaterally attack his or her sentence from its written plea agreements. Although there are district judges on this court that continue to enforce collateral attack waivers found in previously signed plea agreements, this court is of the opinion that it would not be in the interests of justice to enforce such waivers now that the PBA Committee has indicated that such waivers should never have been included in written plea agreements in the first instance. See e.g., United States v. Freeman, No. 11-53, 2014 WL 3419946, at *2-3 (W.D. Pa. Jul. 11, 2014) (McVerry, J.) (citing United States v. Joseph, No. 10-233, 2014 WL 2002280 (W.D. Pa. May 15, 2014) (Ambrose, J.)). Although the court of appeals declined to find

_____

[6] The district court in Deluca ultimately ruled that it need not decide whether the collateral attack waiver was unenforceable due to the unethical conflict of interest because there was no merit to Deluca's substantive claim that he received ineffective assistance of counsel at sentencing. Deluca, 2012 WL 5902555, at *10.

that collateral attack waivers were invalid per se in Grimes, it did not hold in that case, or any other case, that such waivers cannot be held invalid in a particular case.

### 3.    Analysis

This court will not enforce the waiver of Williams' right to file a motion collaterally attacking his sentence to the extent any such motion is based upon either Attorney Lindsay or Attorney Sindler's alleged ineffective assistance. In reaching this holding, this court affords the PBA Committee Opinion significant weight, even though it is not binding.

Attorney Lindsay represented Williams at the July 26, 2011 change of plea hearing, at which time the July 2011 plea agreement was signed. (ECF Nos. 247-48.) Attorney Sindler represented Williams at the hearing on Williams' motion to withdraw his guilty plea, which motion Williams orally withdrew at that hearing. (5/30/12 minute entry; ECF Nos. 291 and 336-37.) Both attorneys, therefore, advised Williams to either accept or reaffirm acceptance of the July 2011 plea agreement, which agreement included a broad waiver of appellate rights, including the right to file a motion collaterally attacking Williams' sentence based upon alleged ineffective assistance of counsel. After issuance of the PBA Committee Opinion, the court and counsel now know that this advice was improper. PBA Committee Opinion at 1.[7] There is no indication in the record that Williams was counseled by an independent lawyer with respect to the advisability of signing such a waiver, which the PBA Committee indicates could allow the conflict to be waived.[8] Id.

---

[7] Pursuant to the PBA Committee Opinion, the United States Attorney's Office's inclusion of the collateral attack waiver in the July 2011 plea agreement was also improper.

[8] Although Attorney Sindler was appointed to represent Williams after Attorney Lindsay's engagement ended, this court does not consider Attorney Sindler to be the "independent lawyer" contemplated by the PBA Committee Opinion. If Attorney Sindler counseled Williams with respect to the propriety of waiving his ineffective assistance of counsel claims against Attorney Lindsay, he did so at the same time that he advised Williams to waive the exact same claims against himself. The court does not consider this representation to qualify as independent legal advice.

Against this backdrop, this court must consider whether the waiver was knowing and voluntary, whether the issue pressed by Williams falls within the waiver, and whether enforcing the waiver would work a miscarriage of justice. Grimes, 739 F.3d at 128-29; Goodson, 544 F.3d at 536. The plea agreement and change of plea colloquy indicate that Williams' waiver of his collateral attack rights was knowing and voluntary. As set forth in detail in section I.B., the court conducted a lengthy and detailed guilty plea colloquy, during which the terms of the waiver included in the July 2011 plea agreement were read into the record, explained, and specifically emphasized by the court. (ECF No. 316 at 4-6.) The colloquy reflects that Williams informed the court at that time that he understood and accepted the terms and scope of the waiver. (Id. at 5-6.) Williams was fully engaged in the court's colloquy, as demonstrated by the fact that Williams asked several pointed questions of the court with respect to his plea and how the federal sentencing guidelines might be applied to his case. (Id. at 9-13.) Although Williams asked about these matters, at no time during the guilty plea hearing did Williams indicate that he required further explanation with respect to the waiver. Williams signed the July 2011 plea agreement, reflecting his consent to its terms. Williams pointed to no evidence that he was unaware of the waiver, did not understand it, or did not wish to accept its terms.

Although the issues pressed by Williams fall within the scope of the waiver, which is the second factor a district court must consider prior to enforcing a waiver of collateral attack rights, under the circumstances, this court finds that enforcing the waiver would "work a miscarriage of justice." Grimes, 739 F.3d at 128-29; Goodson, 544 F.3d at 536; Mabry, 536 F.3d at 244; Khattak, 273 F.3d at 562-63. In reaching this conclusion, the court considers the factors set forth by the Court of Appeals for the Third Circuit in Mabry.

The PBA Committee Opinion establishes that it was an error to include a collateral attack waiver in Williams' plea agreement. Although the practice was customary at the time, and acceptable to Attorneys Lindsay and Sindler, the various Assistant United States Attorneys prosecuting Williams, and this court, pursuant to the subsequently-issued PBA Committee Opinion, the error was of significant gravity and character because it deprived Williams of conflict-free legal counsel. The error would not have been clear to counsel, given that broad appellate and collateral attack waivers were widely accepted and enforced in this judicial district at the operative periods of time. With respect to the impact of the error on Williams and of correcting the error on the government, the court finds that enforcing the waiver would have a significant impact on Williams because it would completely foreclose his ability to raise claims of ineffective assistance of counsel before this judicial body, but that not enforcing the waiver would result in little impact on the government because the court ultimately finds, in this opinion, that Williams' substantive claims are without merit, and that fact discovery and an evidentiary hearing are not needed in order to reach this holding. The final consideration, the extent to which Williams acquiesced in the result, is inconsequential given that Williams acquiesced upon the advice of counsel, which the court now considers to be improper advice based upon the reasoning and analysis set forth in the PBA Committee Opinion.

This court is of the opinion that it would be a miscarriage of justice, under the circumstances of this case, to enforce the collateral attack waiver to prevent Williams from asserting claims of ineffective assistance of counsel against the very counsel that advised him to sign the plea agreement. This court will, therefore, not enforce the waiver and will consider the merits of Williams' ineffective assistance of counsel claims. In doing so the court ascribes no blame to Williams' attorneys or to counsel for the government for allowing the waiver to be included in the

July 2011 plea agreement.  Such waivers were customary and routine at the operative times.  Now, however, this court has the benefit of the PBA Committee Opinion, and finds that enforcing the waiver under these circumstances would not be in the interests of justice.

### B. **Ineffective Assistance of Counsel Claims**

Williams contends that Attorneys Lindsay and Sindler were ineffective during the plea bargaining process.  Williams' claims fall into two categories: (1) errors relating to predicting his career offender status; and (2) errors relating to the propriety of accepting or reinstating the May 2010 plea offer.  Williams cannot establish, under any set of facts, that these errors prejudiced him.

### 1. **Ground One – Career Offender Guideline Advice**

Williams argues that he received ineffective assistance of counsel because, during plea negotiations, Attorney Lindsay failed to advise him properly with respect to the applicability of the career offender guideline, making it impossible for Williams "to make an informed decision to accept or reject the [May 2010 plea offer]." (ECF No. 439 at 3-4, 11.)  Williams' specific factual allegations are that Attorney Lindsay failed to obtain his case file in order to conduct a proper investigation "into the parameters of [his] rap sheet," and completely failed to advise him that he would be a career offender, and later, incorrectly assured Williams that he would not be deemed a career offender. (Id.) According to Williams, "[b]ased on this incorrect advice and misinformation… [he] accepted the second plea on 7-26-2011 and pled guilty without knowledge that he would be sentenced as a career offender based on his prior convictions." (Id. at 4.)  Williams contends that had he been properly advised of his career offender status, he would have signed the May 2010 plea offer, instead of the

July 2011 plea agreement, which would have resulted in a sentence of 100 months incarceration instead of 126 months incarceration.[9] (Id. at 12, 14.)

Williams does not contend that had he been aware of his career offender status he would have refused to sign any plea agreement, maintained his innocence, and proceeded to trial. United States v. Grant, 446 F.App'x 473, 476 (3d Cir. 2011) (recognizing that prejudice can occur where there is a reasonable probability that defendant would not have pled guilty and would have insisted on going to trial). Williams did not allege at sentencing that the career offender guideline was improperly applied to him. (ECF Nos. 330 and 334.) He does not make that contention in his § 2255 motion. (ECF No. 439.)

### (a) Applicable Law

The Court of Appeals for the Third Circuit has "long held that an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where…an adequate plea hearing was conducted." United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007); United States v. Jones, 336 F.3d 245, 254 (3d Cir. 2003); Sepulveda v. United States, 69 F.Supp.2d 633, 641 (D.N.J. Sept. 28, 1999) (citing Masciola v. United States, 469 F.2d 1057, 1059 (3d Cir. 1972)). A defendant's right to be apprised of the court's sentencing options is set forth in Federal Rule of Criminal Procedure 11(c)(1). FED. R. CRIM. P. 11(c)(1). Where a district court, at the plea colloquy, advises a defendant of both the minimum and maximum potential sentence under the statute, and explains the guidelines sentencing process, including that the court has discretion in sentencing, and where a defendant confirms under oath that there are no other agreements or promises regarding his potential sentence,

---

[9] It is noteworthy that Williams' only allegation of harm in his § 2255 motion is that he was denied the ability to accept the May 2010 plea offer. (ECF Nos. 439 at 11, 13 and 453 at 4.) Williams does not contend that the career offender guideline would not have applied under the May 2010 plea offer, and, in fact, the record is to the contrary. Neither the May 2010 plea offer, nor the July 2011 plea agreement address Williams' classification as a career offender. See supra sec. I.E. Williams would have been classified as a career offender regardless of which plea he accepted.

there can be no ineffective assistance of counsel. Shedrick, 493 F.3d at 299; see United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001)("[A]ny alleged misrepresentations that Mustafa's former counsel may have made regarding sentencing calculations were dispelled when Mustafa was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum.").

This general rule applies with equal force where a claim of ineffective assistance of counsel is premised specifically on an alleged failure to explain, prior to a guilty plea, that a defendant might be classified as a career offender and subjected to enhanced penalties as a result. Wooten v. United States, No. 05-3172, 2005 WL 3454310, at *3 (D.N.J. Dec. 16, 2005) (citing Nwachia v. United States, 891 F.Supp. 189, 196 (D.N.J. 1995), which relied on the persuasive reasoning of Thomas v. United States, 27 F.3d 321 (8th Cir. 1994)); see Jones v. United States, 131 F. App'x 819, 821-22 (3d Cir. 2005) (finding no act or omission by counsel that would warrant a finding of ineffective assistance of counsel where attorney failed to advise defendant about the potential application of the career offender guideline).  Where the court explains what the maximum penalty could be, that the court has discretion in imposing a sentencing, and that a sentence cannot be predicted until a Pre-Sentence Investigation Report is completed, counsel's failure to determine whether defendant is a career offender cannot result in prejudice to defendant. United States v. Lambey, 974 F.2d 1389, 1394-95 (4th Cir. 1992) (finding that it is Strickland's second prong, prejudice, that is cured by an adequate plea colloquy); compare Wooten, 2005 WL 3454310, at *3 (citing Nwachia, 891 F.Supp. at 199 for the proposition that an adequate plea colloquy makes it impossible for defendant to prove that counsel's representation fell below an objective standard of reasonableness under Strickland's first prong).

**(b) Analysis**

Even accepting as true Williams' contentions that Attorney Lindsay both failed to advise and misadvised him with respect to whether and how the career offender guideline would apply to him, Williams cannot show prejudice because the court conducted an adequate plea hearing. Shedrick, 493 F.3d at 299; Mustafa, 238 F.3d at 492; Jones, 131 F.App'x at 821-22; Wooten, 2005 WL 3454310, at *3. At the July 26, 2011 change of plea hearing, after establishing that Williams was competent to plead guilty and had been afforded ample time to discuss his case with Attorney Lindsay, (ECF No. 285 at 3-5), the court advised Williams about the minimum and maximum potential sentence under the statute, (id. at 15-16), and explained the guidelines sentencing process, including that the guidelines are advisory and that a court has discretion with respect to arriving at a sentence, (id. at 13-15). Williams confirmed that he understood these matters and that there were no other agreements or promises regarding his potential sentence. (ECF No. 316 at 8, 13-14.)

Relevant portions of the court's colloquy were reproduced in section I.B., above, but some exchanges are important to reproduce here:

> THE COURT: Now, do you understand that the United States Sentencing Commission has promulgated Sentencing Guidelines?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you understand that the Guidelines are advisory and that it is one of the factors that the Court will consider in determining your actual sentence?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And have you discussed with your attorney how the Guidelines might apply in your case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, do you understand that the Court cannot determine the actual advisory Guideline range for your case until after the presentence investigation report has been prepared and you and the government have had an opportunity to challenge the facts and recommendations reported in the presentence report?

THE DEFENDANT: I understand.

THE COURT: So, do you understand that because that process has to take place, that if the Guideline range determined by the Court is different than the Guideline range your counsel discussed with you, you will still be bound by your guilty plea and will have no right to withdraw it, even if your counsel made a mistake?

THE DEFENDANT: Yes.

THE COURT: Now, do you understand, after it has been determined what the Guideline range will be for your case, that the Court will also examine other statutory sentencing factors under Title 18, United States Code, Section 3553(a) that may result in the imposition of a sentence that is either greater or lesser than that called for by the Guidelines?

THE DEFENDANT: Yes, ma'am.

…

THE COURT: Do you understand that if the sentence imposed is more severe, meaning greater, than you expect, you will still be bound by your guilty plea and will have no right to withdraw it?

THE DEFENDANT: Yes.

…

THE COURT: Okay. So, the Court has calculated the pertinent minimum and maximum penalties as follows. Now, do you understand that the minimum penalty to a lesser included offense at Count One of the indictment is a term of supervised release of at least three years?

THE DEFENDANT: Yes.

THE COURT: And do you understand that the maximum penalty to the lesser included offense at Count One of the indictment is a term of imprisonment of not more than twenty years, a term of supervised release of life, and a fine not to exceed $1 million?

THE DEFENDANT: Yes.

(ECF No. 285 at 13-15.)

THE COURT: Now, Mr. Williams, I just want to go over that last paragraph before your signature. It says that you received a letter from your attorney, Mr. Lindsay. Is that true?

THE DEFENDANT: That's true, Your Honor.

THE COURT: It says you read and discussed it with him?

33

THE DEFENDANT: That's true, Your Honor.

THE COURT: It says you accept and acknowledge that it fully sets forth your agreement with the Office of the United States Attorney for the Western District of Pennsylvania. Is that true?

THE DEFENDANT: That's true.

THE COURT: Finally, you are affirming there are no additional promises or representations made to you by any agents or officials of the United States in connection with this matter. Is that true?

THE DEFENDANT: Correct, Your Honor.

…

THE COURT: Has anyone made any prediction or promise to you about what your actual sentence will be, other than what you have been told are the minimum and maximum penalties?

THE DEFENDANT: No.

THE COURT: Is there anything I have said here today that would suggest to you what your actual sentence will be, other than what I told you are the minimum and maximum penalties?

THE DEFENDANT: No.

THE COURT: Mr. Williams, have you been instructed by the government attorney, your attorney, or anyone else, to respond untruthfully to any question this Court has asked you?

THE DEFENDANT: No.

(ECF No. 316 at 8, 14.)

These portions of the colloquy, in combination with the record of the change of plea proceedings as a whole, address each of the issues identified in Shedrick and establish that the court conducted an "adequate plea hearing." Shedrick, 493 F.3d at 299.  Notably, even when Williams became aware, at sentencing, that he qualified as a career offender, Williams did not argue that the guideline was being improperly applied to him, or move to withdraw his guilty plea. Wooten, 2005 WL 3454310, at *3.  As a result, even if Attorney Lindsay failed to advise, or misadvised, Williams with respect to application of the career offender guideline, Williams cannot show prejudice. Jones,

131 F.App'x 819.  Williams cannot satisfy the second prong of <u>Strickland</u>, and his § 2255 motion will be denied on that basis alone.  No kind or amount of fact discovery would change this conclusion.

### 2.  <u>Ground Two – Loss of the May 31, 2011 Plea Offer</u>

Williams asserts that Attorney Lindsay was ineffective because he failed to give Williams "any advice on whether or not to accept the [May 2010] plea offer or reject it," causing him to reject it. (ECF No. 439 at 3.)  Williams contends that Attorney Sindler was ineffective because he failed to "advise [Williams] that he could file a motion seeking to re-instate the [May 2010] plea offer…," and failed to file such a motion on Williams' behalf. (<u>Id.</u> at 4-5.)  According to Williams, his counsels' ineffectiveness caused him to lose the benefits afforded to him in the May 2010 plea offer, which, as summarized above in section I.E.2, amounts to the loss of the additional one-level reduction in his offense level for acceptance of responsibility.  Williams specifically states that

> the appropriate remedy in this case would be to resentence the defendant/petitioner to 100 months because had he been sentenced under the 5-31-2011 [sic]  plea offer, he would have received a sentencing range of 151-188 months then factoring in the courts variance of 4 years, the petitioner's sentence would have been 100 months.

(ECF No. 439 at 14.)  At sentencing, Williams' recommended guidelines sentencing range was calculated to be 168-210 months imprisonment, and, after application of a § 3553(a) downward variance, he was sentenced to serve 126 months imprisonment. (ECF Nos. 332 ¶ 7 and 337.)  Williams' apparent theory is that if his recommended guidelines range started at 151, instead of 168, the court would have applied the same variance, which would have resulted in a lower sentence.

### (a)     **Applicable Law**

The Sixth Amendment of the Constitution guarantees criminal defendants the right to effective assistance of counsel, which "extends to the plea-bargaining process." Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012) (ineffective assistance led to defendant rejecting plea offer and being convicted at trial); Missouri v. Frye, 132 S.Ct. 1399, 1404-08 (2012) (ineffective assistance led defendant to accept a second, less favorable, plea offer); Padilla v. Kentucky, 130 S.Ct. 1473, 1486 (2010); Hill v. Lockhart, 474 U.S. 52, 57 (1985). This right, in the plea-bargaining context, encompasses claims that counsel provided incorrect legal advice that resulted in a defendant rejecting a favorable plea offer. Lafler, 132 S.Ct. at 1384; Frye, 132 S.Ct. at 1409-10.

The same two-part analysis set forth in Strickland, applies to alleged ineffective assistance of counsel during the plea bargaining process. Hill, 474 U.S. at 57. The first part of the Strickland analysis remains the same, but under the prejudice prong "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 132 S.Ct. at 1384. If a defendant rejects a plea, he must show that "but for counsel's deficient performance there is a reasonable probability he and the trial court would have accepted the guilty plea" and the resulting sentence would have been lower. Id. at 1391; see also Frye, 132 S.Ct. at 1409; Shotts v. Wetzel, 724 F.3d 364, 374-76 (3d Cir. 2013); United States v. Booth, 432 F.3d 542, 546–47 (3d Cir. 2005); Baker v. Barbo, 177 F.3d 149, 154–55 (3d Cir. 1999).

Although the Court of Appeals for the Third Circuit has not definitively addressed the issue, other courts of appeals have held that requiring the government to reinstate a prior plea offer is the appropriate remedy. Williams v. Jones, 571 F.3d 1086, 1092 & n.5 (10th Cir. 2009) (collecting cases); United States v. Allen, 53 F.App'x 367, 373-74 & n.2 (6th Cir. 2002) (finding that reinstatement of an expired plea offer was the appropriate remedy); United States v. Vargas-Lopez,

36

243 F.3d 552 (9th Cir. 2000); see Boyd v. Nish, 2007 WL 403884, at *5 (E.D. Pa. Jan. 31, 2007)

(stating writ of habeas corpus would issue unless Commonwealth reinstated terms of prior plea offer

within 90 days), overruled on other grounds, sub nom, Boyd v. Waymart, 579 F.3d 330 (3d Cir.

2009)).

### (b)    Discussion

As an initial matter, the court will accept Williams' factual contentions as true for

purposes of deciding the instant motion. Strickland, 466 U.S. at 688.  According to Williams,

Attorney Lindsay offered him no advice with respect to the propriety of accepting the May 2010 plea

offer, and Attorney Sindler did not advise him that he could have moved to reinstate the May 2010

plea offer based on Attorney Lindsay's deficient representation. (ECF No. 439 at 3-5.)   As an initial

matter, the court rejects Williams' contentions with respect to Attorney Sindler because they are

contradicted by the record.  Attorney Sindler did move to withdraw Williams' guilty plea on the

ground that it was the result of Attorney Lindsay's ineffective assistance. (ECF No. 292 at 6-7.)

Williams, however, voluntarily withdrew that motion at the hearing scheduled on it.  Attorney Sindler

was, therefore, unable to take the subsequent step of seeking reinstatement of the May 2010 plea

offer due to Williams' own conduct.  Attorney Sindler's representation cannot fall below the

objective standard of reasonableness under these circumstances.  Even assuming for purposes of this

opinion that Attorney Lindsay's representation fell below the objective standard of reasonableness,

Williams cannot establish prejudice.

The Supreme Court has set forth a specific test for demonstrating prejudice in the

context of a rejected plea offer: "To demonstrate prejudice in the context of a rejected plea offer, a

defendant must show that, 'but for the ineffective advice of counsel there is a reasonable probability

that a) the plea offer would have been presented to the court (i.e., that the defendant would have

accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), b) the court would have accepted its terms, and c) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." United States v. Seeley, No. 13-2083, 2014 WL 3511727, at *5 (3d Cir. Jul. 17, 2014) (citing Lafler, 132 S.Ct. at 1385); accord Frye, 132 S.Ct. at 1409. Williams cannot demonstrate that, but for the ineffective advice of counsel, there is a reasonable probability that the May 2010 plea offer would have been presented to the court.

Williams must first prove that, at the time of the plea negotiations, he would have accepted the May 2010 plea offer in the first instance if Attorney Lindsay had properly advised him. The May 2010 plea offer required Williams to plead guilty to count one of the indictment, which involved both powder and crack cocaine, and to stipulate to a drug quantity of between 400 and 500 grams of powder cocaine. (ECF No. 445-2.) When the May 2010 plea offer was viable, Williams' motion to suppress evidence was pending, and if it had been resolved in his favor, he may not have chosen to plead guilty. Williams does not contend that he would have withdrawn his motion to suppress evidence prior to pleading guilty; yet, in order to accept that May 2010 plea agreement he would have had to withdraw his suppression motion. The government advised that the May 2010 plea offer would expire approximately one week prior to the suppression hearing. In other words, to accept the May 2010 plea offer, Williams would have had to forgo the hearing on his suppression motion. He did not indicate that he would have done so. Williams' motion to suppress was denied, plea negotiations continued, and Williams obtained additional concessions from the government, i.e., pleading guilty to a lesser charge and a lesser amount of drugs. (ECF No. 445-1.) Although the July 2011 plea agreement included only a two-level reduction for acceptance of responsibility, instead of a three-level reduction, at the time the May 2010 plea offer remained viable, Williams did not know

what the terms of any subsequent plea offers would be, and whether, or how, they would be more, or less, favorable to him. Under these facts, which would not change were Williams permitted to take additional discovery, Williams cannot demonstrate that he would have accepted the May 2010 plea offer before it expired had he received competent advice from Attorney Lindsay.

Williams must also prove that the prosecution would not have withdrawn the prior plea offer in light of intervening circumstances. There is no dispute that the terms of the May 2010 plea offer expired on May 24, 2011, because the government was required to oppose Williams' motion to suppress. The government's need to prepare for and participate in a hearing on Williams' motion to suppress is an intervening circumstance that would justify the government's withdrawal of the May 2010 plea offer, and its refusal to again offer the full three-level reduction for acceptance of responsibility in future plea agreements. <u>Sanders</u>, 208 F.App'x at 163. Under these facts, which would not change were Williams permitted to take additional discovery, Williams cannot demonstrate that the government would not have withdrawn the May 2010 plea offer in light of intervening circumstances. The May 2010 plea offer, in fact, expired by its own terms prior to the hearing on Williams' motion to suppress.

Williams likewise cannot establish that the result of the proceedings would have been different. The only prejudice that Williams contends that he suffered as a result of his counsels' alleged ineffectiveness was the inability to sign the May 2010 plea offer. Williams does not assert his innocence; he cannot logically do so under these circumstances. Williams does not assert that the career offender guideline should not have been applied to him. As stated previously, the only relevant difference between the May 2010 plea offer and the July 2011 plea agreement is the additional one-point reduction in offense level for acceptance of responsibility in the former. Williams does not content that the government's refusal to include a three-level reduction for

acceptable of responsibility in the July 2011 plea agreement, which agreement was offered after Williams filed, briefed, and argued a motion to suppress, rises to the level of prosecutorial vindictiveness, is based on an unconstitutional reason, or is not rationally related to the legitimate governmental interest of incentivizing defendants to promptly plead guilty. U.S.S.G. § 3E1.1(b), appl. note 6; Drennon, 516 F.3d at 162-63; Wright, 289 F.App'x at 546; Sanders, 208 F.App'x at 163.  The court finds no evidence of such improper conduct on the part of the government.  It is instead evident from the record that the government withdrew the additional one-level reduction after it was required to oppose Williams' motion to suppress. (ECF No. 450-1.)  The court of appeals has found this to be a valid reason for the government to withdraw the additional one-level reduction for acceptance of responsibility. Sanders, 208 F.App'x at 163.  The loss of that one-level reduction cannot form the basis of prejudice, and Williams cannot otherwise establish a reasonable probability that the result of these proceedings would have been different.[10]

        Because Williams, under these circumstances, cannot show prejudice, his § 2255 motion to vacate must be denied.

---

[10] The court need not reach Williams' argument that his sentence would have been less severe because he is unable to establish that the May 2010 plea offer would have been presented to the court. The court notes, however, that Williams' argument that this court would have applied the same, or an even greater, variance is problematic. Application of a variance is always within the discretion of the district court, United States v. Fankovic, 413 F.App'x 544, 545-56 (3d Cir. 2011) (citing United States v. Brown, 578 F.3d 221, 225-26 (3d Cir. 2009)).  The possibility that this court would have applied the same, or a greater, variance is purely speculative. Brennan v. United States, 322 F.App'x 246, 247-48 (3d Cir. 2009)(citing Barker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999)); Conjo-Berera v. United States, No. 06-57, 2013 WL 4718330, at *6 (W.D.N.C. Sept. 3, 2013)(rejecting argument that defendant "could have received a lesser sentence if the court had granted the same downward variance" that it applied at defendant's post-trial sentencing, during a hypothetical sentencing following defendant's acceptance of a previously-rejected plea agreement).

C.    **Certificate of Appealability**

A court should issue a certificate of appealability where a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  A movant meets this burden by showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Based upon the motion, files, and records of the case, the court finds that Williams has not shown a substantial denial of a constitutional right or that reasonable jurists would find this court's assessment of his claims debatable or wrong. Therefore, a certificate of appealability should not issue.

IV.    **CONCLUSION**

For the foregoing reasons, Williams does not qualify for relief under § 2255.  An appropriate order will be entered contemporaneously with this opinion.

August 14, 2014                                    BY THE COURT,

                                                   /s/ *Joy Flowers Conti*
                                                   Joy Flowers Conti
                                                   Chief United States District Judge

cc:      All Counsel of Record

         ROBIN WILLIAMS
         30446-068
         FCI Ashland
         P.O. Box 6001
         Ashland, KY  41105